GLADYS GONZÁLEZ WIDOW OF VIERA, ETC., Petitioners, v. SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, JORGE MELÉNDEZ VELA, JUDGE, Respondent; PUERTO RICO INSTITUTE OF PSYCHIATRY, INC., Intervener.

No. C-65-120. Decided May 2, 1966.

*Miguel A. Velázquez* and *Raúl Serrano Geyls* for petitioners. *González & Rodríguez* for the United States Fidelity & Guaranty Co. *José R. Fournier* for the Puerto Rico Institute of Psychiatry, Inc.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Petitioners filed an action for damages against the Puerto Rico Institute of Psychiatry, Inc., its insurer, United States Fidelity & Guaranty Co., Hato Tejas Development Co., and Eduardo D. Maldonado Sierra, Rafael Boyer and Julio Frank. In synthesis, they alleged that on January 4, 1963 the relatives of Rafael Viera confined him in a hospital operated by the defendants for medical treatment; that through defendants' negligent conduct said patient received serious injuries while confined in the hospital; that said injuries were caused when the patient was physically assaulted by another person and/or upon falling against the pavement while no vigilance was being exercised in one of the hospital cells; that after receiving the injuries mentioned he did not receive adequate medical care and that as a result of the injuries the patient died at the hospital on January 13, 1963.

The United States Fidelity & Guaranty Company answered denying the essential allegations of the amended complaint and as affirmative defenses it alleged that the death of Rafael Viera was not caused by any negligent act of its assured, Puerto Rico Institute of Psychiatry, Inc.; that the complaint does not adduce facts sufficient to constitute a cause of action against them, and that if Viera's death has occurred as stated in the complaint, it was as a result of the treatment he underwent and that said phase is excluded in the policy.

The other defendants answered accepting the fact of Viera's confinement in the hospital operated by the Puerto Rico Institute of Psychiatry, Inc., as well as that of his death and they further accepted the existence of the insurance contract with the U.S. Fidelity and Guaranty Co. They denied all the other facts and as defense they alleged that no carelessness or negligence had been committed.

The defendants filed a motion requesting that an interlocutory summary judgment be entered in their favor and against the Puerto Rico Institute of Psychiatry, Inc., and United States Fidelity & Guaranty Company, alleging that there was not a real controversy regarding the essential averments, with the exception of the damages suffered by said petitioners. Attached to said motion were the following documents:

(1) Requirement for Admissions marked number 2 and its answer which reads thus:

"Second: It accepts that Rafael Viera was admitted to the Puerto Rico Institute of Psychiatry, was given a complete physical examination which appears in the medical record of said patient at the hospital. The record shows that the condition of the heart was normal, that the lungs were clear upon palpation, the functions of the neck and of the head were normal."

(2) Requirement for Admissions marked number 3 and answer to same:

"Third: It is admitted that during the 7:00 a.m. shift change on January 10, 1963, patient Rafael Viera received injuries on the right side of the face, in the neck, and a serious laceration at the level of the superior molars while confined in the Puerto Rico Institute of Psychiatry. It is accepted that the medical record of the patient shows the note which is copied into the Requirement for Admissions."

Said note reads:

"1/10/63—Mrs. Guzmán

"In the change of shift from 11–7 to 7–3 one of the ward boys brought in patient Rafael Viera all covered with blood and a side of his face swollen. After washing him up to find out what he had, we noticed cuts in the face and inside his mouth. The doctor on duty was called and he saw the patient. He ordered that ice bags be applied to the face.

"I was informed that there was a fight at dawn. Mrs. Roque reports that nothing had happened, that they had been separated and that everything was in order. Nobody has been able to explain what time this accident occurred.

Respectfully,<br>Mrs. Horta."

(3) Answer to the Requirement for Admissions marked number 5, in which it is admitted:—

"5. On January 13, 1963 patient Rafael Viera Medina became cyanotic as a result of a lung condition, which originated in the injured area of his neck, as a result of the injuries received on January 10, 1963 and as a consequence of this condition the patient died in the same hospital."

(4) Medical record of patient Rafael Viera kept by the Puerto Rico Institute of Psychiatry, Inc.

(5) Answers to the amended complaint filed by both defendants.

(6) Copy of the Insurance Contract (Policy No. GL-653746) between said codefendants.

(7) Transcript of the sworn statement of the doctor who performed the autopsy of the deceased of the defendants, before the Puerto Rico House of Representatives and in whose testimony it is stated that the autopsy reveals that Viera died from a pulmonary embolism and that this embolism was produced by the injuries received by said patient. The doctor also stated: "Then I see the record here, that he actually had received a blow, had fallen off the tub, had received a contusion, several contusions in the face, which are described in this report."

Puerto Rico Institute of Psychiatry, Inc., filed an unverified motion opposing that summary judgment be entered against it. It alleged that neither the allegations nor the documents introduced establish the negligent conduct for which they are charged to be liable. The other codefendant did not appear in court to oppose the motion for summary judgment.

The negligence charged to the defendants consists in their lack of necessary vigilance and care to prevent the deceased from (1) being assaulted by other person, or (2) falling on the floor as a result of which he received the injuries which caused his death when the patient developed pneumonia of a traumatic origin.

The documents attached to the motion for summary judgment do not establish that patient Viera had been the object of an attack by another person while confined in the hospital. The note in the medical record, signed by Mrs. Horta, reads in its pertinent part: "I was informed that there was a fight at dawn. Mrs. Roque reports that nothing had happened, that they had been separated and that everything was in order. Nobody has been able to explain what time this accident occurred."

Assuming that evidence was admissible for the purposes of proving the occurrence of a fight and an attack, what that note says is that in that fight nothing had happened, that they had been separated and that everything was in order. It cannot be affirmed that patient Viera received the injuries which caused his death in that fight.

Assuming likewise that the facts recited by information by Dr. Taveras in his sworn statement during a public hearing held before a committee of the House of Representatives, could serve as basis for a summary judgment,[1] such state-

---

[1] See 6 Moore, Federal Practice 2801 *et seq.*, § 56.22; *Roucher* v. *Traders & General Ins. Co.*, 235 F.2d 423.

ment only establishes the fact that patient Viera was injured when he fell in the bathroom at the hospital. On the basis of this fact would the application of the *res ipsa loquitur* doctrine to impose liability on the operators of the hospital be appropriate?

■ Too well known are the requirements necessary for the application of the *res ipsa loquitur* doctrine.[2] It is not necessary to reexamine them now. It suffices to say that according to the first of said requirements, the accident should not ordinarily happen except through the negligence of another person. That is, the circumstances in which the accident happened must give reasonable basis to infer that somebody has been negligent. In the case at bar, nevertheless, even accepting that the petitioners were able to establish that their predecessor died as a result of the injuries he received when he fell in the bathroom at the hospital, that fact in itself is insufficient to infer that somebody was negligent. Certainly, a person's fall in a bathroom, even in the case of a person mentally deranged, in the absence of other concurring circumstances, is probably produced, according to human experience, without contributory negligence on somebody else's part. In other words, in the field of probabilities, a reasonable man cannot affirm that it is more probable that there was negligence than there was not, if the only act he knows was that a mentally deranged patient took a fall in the bathroom of the institution where he was confined. The first question we would ask ourselves would be whether the general condition of the patient or the location and physical configuration of the bathroom did not allow him, without adequate help and vigilance, to use the bathroom without the risk of receiving injuries. When these and other circumstances exist, it might be inferred that the patient's fall was due to somebody's negligence, but in this

---

[2] *Community Partnership* v. *Presbyterian Hospital*, 88 P.R.R. 379 (1963).

case the record lacks that or any other evidence which could give margin to the inference of negligence.

██ ██ On the other hand, disputes on negligence shall not ordinarily be decided by means of summary judgment but rather, in a plenary trial, unless, of course, the record shows that there is no genuine controversy with respect to the fact of negligence.[3] In case of doubt as to whether a real controversy of substantial facts exists, the doubt shall be decided against the summary judgment.[4]

Inasmuch as the petitioners have not established the negligence in controversy by means of the documents attached to the motion for summary judgment, the essential fact of negligence is still in controversy to be decided in the corresponding trial.

The respondent court did not err upon denying the motion for summary judgment.

The writ issued shall be quashed and the case remanded for further proceedings.

---

[3] *Roucher* v. *Traders & General Ins. Co.*, 235 F.2d 423; *Rogers* v. *Peabody Coal Company*, 342 F.2d 749; *Aetna Ins. Co.* v. *Cooper Wells & Co.*, 234 F.2d 342.

[4] *Pickle* v. *Trimmel*, 93 F.Supp. 823.